IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : 4:17-CR-00403 |
| | : |
| v. | : (Judge Brann) |
| | : |
| RAYMOND KRAYNAK | : (Electronically Filed) |

**REPLY TO GOVERNMENT'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE
UNDER F.R.E 402, 403 AND 404**

AND NOW, comes the defendant, Raymond Kraynak, by his attorneys Thomas A. Thornton and Gerald A. Lord of the Federal Public Defender's Office, and files this Reply to Government's Brief in Opposition to Defendant's Motion *in Limine* to Preclude Evidence Under F.R.E. 402, 403 and 404.

## I.   Introduction

Both Dr. Kraynak and the government were required to file their briefs in Opposition to Motions *In Limine* on June 21, 2021. The Government's brief contained specific information regarding the evidence they intend to present at trial. The defense was unaware of the nature and extent of the evidence that the government intended to introduce at trial until their brief (Doc. 131) was filed. This reply specifically addresses that evidence.

## II. Argument

The following evidence should be excluded from trial because it is irrelevant, unfairly prejudicial, confuses the issues, misleads the jury, will cause undue delay and wasting of time while needlessly presenting cumulative evidence. The probative value of the evidence is substantially outweighed by the danger of entering impermissible character evidence of uncharged misconduct. (F.R.E 401, 402, and 404).

### A) Administrative Licensing and Medical Board Actions

The government seeks to enter Bureau of Professional and Occupational Affairs Consent Agreements and Orders where it was agreed, in one instance, that Dr. Kraynak did not admit wrongdoing and, in the other instance, was apparently not adjudicated. The government also seeks to admit records from the Pennsylvania Board of Osteopathic Medicine which found that Dr. Kraynak was not subject to disciplinary action because his prescription practices were not outside the normal course of Osteopathic practice and had a legitimate medical purpose. The Osteopathic Board found only that his notetaking should improve and ordered Dr. Kraynak to take six hours of training on that subject. There was no wrongdoing found or admitted.

This evidence is irrelevant and would mislead the jury. The evidence is also highly prejudicial because there was no finding or admission of wrongdoing. The evidence is incompetent to prove any fact of consequence and therefore should be excluded.

### B) PDMP and Pharmacy Records

### 1) PDMP (Physician's Drug Monitoring Program)

The government is seeking to admit records which are irrelevant and misleading. The PDMP is irrelevant because it was not mandatory to report pill counts to that agency until January 1, 2017. *See* (Exhibit A). All of the prescription activity alleged against Dr. Kraynak occurred before anyone was required to report what opioids they were dispensing. Smaller private pharmacies and medical practices which dispensed controlled substances took long past January 1, 2017, to come into full compliance. In the area where Dr. Kraynak practiced, there was significant difficulty getting all of the dispensers on board. It certainly does not capture "practice wide information."

The claim that Dr. Kraynak was a "top prescriber" is also questionable as a result of the PDMP not being mandatory and the time that it took to bring all dispensers into compliance. Of further question, is the fact that the government has arbitrarily chosen an unusual sample of Dr. Kraynak's prescription practices to

3

make this assertion. The government has chosen to present 19 months of records to support their contention. Certainly, there must be a reason why it is 19 months rather than a yearly measure as would be expected. Clearly pre-trial discovery is necessary.

By separate notice to the government, counsel will request all Pennsylvania PDMP data for the years preceding and following the 19-month period that the government has chosen to use as evidence to show that Dr. Kraynak was the "top prescriber". Dr. Kraynak objects to the entry of this evidence because it is incomplete and may be misleading. Furthermore, labeling a defendant as the "top prescriber" is unfairly prejudicial because it is based on a program which was not mandatory at the time that the prescriptions were issued. Allowing admission of such evidence will usurp the function of the jury because they will be inflamed and impassioned by the "top prescriber label." Pursuant to Fed. R. Evid. 401, 403 and 404, Dr. Kraynak asks that the evidence be excluded. Also, evidence related to a non-mandatory reporting period is irrelevant under F.R.E. 402.

**2) Pharmacy Records**

The government seeks to enter evidence that pharmacies refused to fill prescriptions because of "… requests for early prescription refills." *See* (Page 9 of Government's Brief in Opposition). This evidence is completely inappropriate,

irrelevant and without any probative value. It was not Dr. Kraynak asking for the early refills, it was the patients asking the pharmacists for early refills. Dr. Kraynak did not send them to ask for early refills. The fact that they were asking for early refills at the pharmacy is actually clear evidence that Dr. Kraynak was not providing early prescriptions and was practicing within the normal course of his practice and prescribing for a legitimate medical purpose.

      This evidence of patients' actions at pharmacies has no relevance to whether or not Dr. Kraynak's prescription practices were within the normal course of practice and for legitimate purposes. Furthermore, there is no probative value or relevance for admitting evidence to establish that Dr. Kraynak was the biggest prescriber from individual pharmacies. *See* (Chart, Government's Brief in Opposition, page 9-10). The number of doctors practicing in that region of coal country has declined precipitously in the last 15 years. Older doctors are retiring and no one is replacing them. Until the chain drug stores moved into the area, there were only a few private pharmacies. Dr. Kraynak was one of the few family practice doctors in that part of coal country at the time of this indictment.

      Dr. Kraynak had thousands of patients, worked 7 days a week and took Medicaid and Medicare payments as satisfaction in full. Co-pays were forgiven when patients were poor. The percentage of an arbitrarily chosen pharmacy's dispensation is irrelevant to whether the prescriptions were written for legitimate

purposes and in the normal course of practice. This is just another attempt by the government to enter evidence which would usurp the function of the jury. Once again, the government will be asking the jury to decide guilt or innocence based on whether or not other doctors prescribed more or less. Not on the elements of the offenses changed.

The practice of medicine is an individual art. Each patients' symptoms can lead to different diagnoses. Similar symptoms may have different causes and need to be treated differently. Each patient must be treated as a unique person.  It is improper for the government to compare apples to oranges with a chart that separates doctors by the numbers of pills they prescribed rather than the symptoms and conditions of their patients that caused the pills to be prescribed.

### C) Referrals from Medical Insurers

#### 1) Blue Cross Blue Shield

It must be noted that the evidence that the government seeks to introduce is from only Blue Cross Blue Shield Network. The evidence sought to be introduced does not involve complaints from any other medical insurers in the State of Pennsylvania. Anthem, Blue Cross Blue Shield and Express Scripts are all part of one network. The evidence does not include patients who self-paid or went to

small, mom-and-pop pharmacies to have their prescriptions filled. The comparisons to other doctors are incomplete, misleading and highly prejudicial.

Counsel will be requesting that the government provide in discovery all communications with the Blue Cross Blue Shield network that were received regarding Dr. Kraynak. The evidence does not delineate between chronic complainers, abusers and those "booted out" by Dr. Kraynak's screening procedures. This should include complaints as well as compliments. Counsel will also be asking for all raw data from which the charts were generated and any computer programs or algorithms that were used to prepare the charts.

Since the government decided to only look at the Blue Cross Blue Shield network, the documents, letters, referrals, investigative reports and other findings from their investigations are incomplete and may be misleading. The evidence should not be admitted at trial because it is irrelevant, confusing and will mislead the jury into thinking, without any evidence, that this is only the tip of the iceberg. Even a "small risk of misleading the jury," or "a modest likelihood of unfair prejudice" is enough to outweigh the probative value of marginally relevant evidence. *See United States v. Espinoza-Baza*, 640 7 F. 3d 1182, 1191 (9th Cir. 2011). The Blue Cross Blue Shield evidence is exactly the type of evidence which has marginal relevance and should be excluded.

### 2. Health Integrity Referral

Health Integrity, LLC is a for-profit company that sold its services to Medicare in an attempt to spot problems in Medicare Part D. It is not a health insurer, it is a provider of algorithmic services. The name of the algorithm they developed is clearly designed to be sensational and to attract business. The name of the algorithm should never be used during trial as it is highly prejudicial and is intended to make the jury believe that a computer has already done its work for them and therefore Dr. Kraynak must be guilty. Similarly, any "score" generated by the algorithms should be excluded and any conclusion from that algorithm about whether Dr. Kraynak was practicing outside the normal course of practice and without a legitimate medical purpose should not be allowed as evidence. Entry of such evidence would be an impermissible opinion on the ultimate issue. *See* (F.R.E 704).

It appears that the government is attempting to provide expert opinion testimony through this evidence. The government has provided no information from which to believe that the algorithm is reliable or that the conclusions are based on sufficient facts and data applying reliable principles and methods. There is no evidence that the product has ever been tested, whether there is an error rate, or whether it is accepted in any relevant community. There is no indication of any "compliance rate" by dispensers or number of times the program had to be "fixed".

The algorithm is a "for-profit" product that should not be admitted without a *Daubert* challenge. The only notice of expert testimony seems to be the government's argument in its brief. The evidence should also be excluded under Fed. R. Evid. 401, 402, 403 and 404.

Again, counsel will be requesting the raw data, criteria programs and algorithms that generated this conclusion by a separate Discovery request to the government in conjunction with this filing.

### D) Prescriptions of Opioids and Benzodiazepines together

Dr. Kraynak does not deny writing any of the prescriptions that he wrote. He will explain the exact reason and need for every prescription for each individual patient. He prescribed opioids and benzodiazepines to some patients because they needed those medications. There is no reason for the government to refer to these combinations by nicknames given by street dealers. Dr. Kraynak never used these highly inflammatory and prejudicial nicknames. The government should not now be allowed to tar him with made up street names for drugs just because they sound bad and will evoke an emotional response from the jury the government hopes will lead to conviction. This is no more than an impermissible attempt to smear Dr. Kraynak when there is no evidence that he had suddenly abandoned his ethics and morals to become a drug dealer for no profit or other reason.

The nicknames trumpeted by the government are irrelevant and highly prejudicial. They should be excluded pursuant to F.R.E 401, 403 and 404.

### III.  Conclusion

As noted by the government, "the central element of all the counts in the indictment, therefore, is whether Kraynak prescribed controlled substances outside the usual course of professional practice [and] without a legitimate medical purpose and that he did so knowingly and intentionally." (Brief Pg. 18). The issues in this trial are very narrow. Dr. Kraynak does not deny that he knowingly and intentionally wrote his prescriptions. There is no defense that these prescriptions were, as portrayed by the government, "merely bad judgments". Dr. Kraynak's repeated and extensive prescriptions from his offices are admitted. There was no prescription practice outside the office. The only question is whether his practice was so outside the normal course of practice, and for no legitimate purpose, that he became a drug dealer instead of a doctor.

Dr. Kraynak asks for nothing more than a fair trial. If the evidence referenced above is not excluded, his chance at a fair trial is significantly diminished. In the interest of justice, and the Federal Rules of Evidence, all of the items detailed above should be excluded. It is unlikely that a limiting instruction could ever cure this onslaught of inappropriate evidence. However, if the court

does not decide to exclude the evidence, then Dr. Kraynak asks that all of the above challenged evidence and the evidence challenged by his F.R.E 404(b) (Doc. 119) motion be held until cross-examination or rebuttal to see if the pertinent issues are actually raised at trial.

Date:  June 28, 2021

Respectfully submitted,

| | |
|---|---|
| */s/ Thomas A. Thornton* | */s/Gerald A. Lord* |
| Thomas A. Thornton, Esquire | Gerald A. Lord, Esquire |
| Assistant Federal Public Defender | Assistant Federal Public Defender |
| Attorney ID# 44208 | Attorney ID# PA49539 |
| 100 Chestnut Street, Suite 306 | 330 Pine Street, Suite 302 |
| Harrisburg, PA  17101 | Williamsport, PA 17701 |
| TEL: 717-782-2237 | TEL: 570-323-9314 |
| FAX: 717-782-3881 | FAX: 570-323-9836 |
| *thomas_thornton@fd.org* | *gerald_lord@fd.org* |
| *Attorney for Raymond Kraynak* | *Attorney for Raymond Kraynak* |

# CERTIFICATE OF SERVICE

Thomas A. Thornton and Gerald A. Lord, Assistant Federal Public Defenders, do hereby certify that this document, the foregoing **Reply to Government's Brief In Opposition to Defendant's Motion *in Limine* to Preclude Evidence Under F.R.E. 402, 403 and 404** filed electronically through the ECF system will be sent to the registered Participants as identified on the Notice of Electronic Filing, including the following:

> WILLIAM BEHE, ESQUIRE
> Assistant United States Attorney

and by placing the same in the United States mail, first class, postage prepaid, at Harrisburg / Williamsport, Pennsylvania, addressed to the following:

> RAYMOND KRAYNAK

Date: June 28, 2021

| | |
|---|---|
| *s/Thomas A. Thornton* | *s/Gerald A. Lord* |
| Thomas A. Thornton | Gerald A. Lord, Esquire |
| Assistant Federal Public Defender | Assistant Federal Public Defender |