## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

      v.

RAYMOND KRAYNAK,

      Defendant.

No. 4:17-CR-00403

(Judge Brann)

### MEMORANDUM OPINION

### JULY 20, 2021

Currently pending before the Court are several pretrial motions filed by Raymond Kraynak.[1] For the following reasons, those motions will be denied.

## I.    BACKGROUND

In 2017, Kraynak was indicted on nineteen separate charges related to his conduct as a physician who was licensed to prescribe Schedule II, III, IV, and V controlled substances.[2] In Counts 1 through 12, Kraynak is charged with unlawfully distributing and dispensing a controlled substance to twelve different individuals, in violation of the Controlled Substances Act, 21 U.S.C. § 841(a)(1) and (b)(1)(C).[3]

---

[1]   Docs. 106, 108, 110, 112, 114.

[2]   Doc. 3.

[3]   *Id.* at 15-17. The indictment alleges that Kraynak dispensed controlled substances as follows: Count 1—hydrocodone to R.C. from December 21, 2012 to May 2, 2015; Count 2—oxycodone to F.H. from December 21, 2012 to July 31, 2014; Count 3—oxycodone to D.H. from June 2013 to February 17, 2015; Count 4—oxycodone to A.K. from December 21, 2012 to October 24, 2013; Count 5—hydrocodone to M.L. from December 21, 2012 to October 15, 2014; Count 6—oxycodone to C.S. from December 21, 2012 to April 29, 2014; Count 7—oxycodone to D.B. from January 2014 to October 5, 2014; Count 8—oxycodone to W.E. from December 21, 2012 to December 14, 2014; Count 9—oxycodone to F.G. from December 21, 2012 to February 10, 2013; Count 10—oxycodone to T.M. from December 21, 2012 to April 28, 2014;

Counts 13 through 17 allege unlawful distributing and dispensing of a controlled substance resulting in death, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).[4] Finally, Counts 18 and 19 allege that Kraynak maintained two drug-involved premises, in violation of 21 U.S.C. § 856(a)(1).[5]

As alleged in the indictment, Kraynak is a Doctor of Osteopathy and, in that capacity, he was previously disciplined by the Commonwealth of Pennsylvania Department of State, Board of Osteopathic Medicine (the "Board") for allegedly failing to maintain proper documentation to justify controlled substance prescriptions, and for failing to take other appropriate actions with respect to those prescriptions.[6] The Government alleges that, from May 2012 until January 2016, Kraynak prescribed 3,622,598 oxycodone pills, which accounted for 80.62% of the controlled substances that he prescribed during that period and that, from January 1, 2016 until July 31, 2017, Kraynak "prescribed an aggregate of 2,792,490 dosage units of oxycodone, hydrocodone, OxyContin[,] and fentanyl to approximately 2,838 patients," which "made Kraynak the top prescriber for all of the Commonwealth of Pennsylvania for these controlled substance during this 19-month

---

Count 11—fentanyl to J.S. from January 2013 to July 6, 2016; and Count 12—oxycodone to R.W. from February 2013 to September 15, 2016.

[4]   *Id.* at 18-19. The indictment alleges that Kraynak distributed controlled substances causing death as follows: Count 13—alprazolam, hydrocodone, and carisoprodol to R.C. on or about May 2, 2015; Count 14—oxycodone to D.H. on or about February 17, 2015; Count 15—oxycodone and alprazolam to A.K. on or about October 24, 2013; Count 16—temazepam, alprazolam, and hydrocodone to M.L. on or about October 15, 2014; and Count 17—oxycodone, carisoprodol, diazepam, and zolpidem to C.S. on or about April 29, 2014.

[5]   *Id.* at 20-21.

[6]   *Id.* at 1-3.

period of time."[7] These numbers allegedly resulted from Kraynak's practice of prescribing controlled substances outside of the usual course of professional practice and without a legitimate medical purpose.[8]

The Government further avers that Kraynak's medical records demonstrate that his patient files frequently were "incomplete or missing and . . . failed to contain the required information regarding symptoms observed and reported, diagnosis of condition, direction for use, changes in symptoms observed and reported in their diagnosis of the condition for which the controlled substance was being given and in the directions given to the patient."[9] As a result of these facts, the Government alleges that Kraynak did not issue prescriptions to certain individuals "for legitimate medical purposes and in the usual course of professional practice" but, instead, acted as a drug trafficker during those encounters.[10]

Kraynak has now filed five pretrial motions. First, he seeks to sever the counts and hold separate trials on many of the individual charges.[11] Second, he asks to strike what he asserts is surplusage in the indictment.[12] Third, he requests disclosure of any electronic or other undercover surveillance of Kraynak or his former business.[13] Fourth, Kraynak seeks the disclosure of any rough notes or recordings that officers

---

[7]   *Id.* at 7-8.
[8]   *Id.* at 13-15.
[9]   Doc. 126 at 3.
[10]  *Id.* at 2.
[11]  Doc. 106.
[12]  Doc. 108.
[13]  Doc. 110.

gathered during witness interviews.[14] Finally, he moves for a bill of particulars.[15] The Government opposes Kraynak's pretrial motions.[16]

## II.    DISCUSSION

### A.    Motion to Sever Offenses

First, Kraynak argues that the charges should be severed as they relate to different alleged victims. Kraynak asserts that he will suffer undue prejudice if the counts remain joined, as there is a "substantial" risk of prejudice due to the danger that "multiple counts will function as character evidence for each of the other counts, persuading the jury that Dr. Kraynak has a propensity to commit the crimes charged" and "that the jury will believe that if one patient's prescription was outside the normal course of practice and without a legitimate purpose, then all the prescriptions must be similarly fatally flawed."[17]

The Government in turn argues that there is no clear and substantial evidence of prejudice sufficient to support severance, particularly since (1) a jury may easily distinguish between the evidence relevant to each count; (2) the evidence for each count would be admissible at separate trials; and (3) any potential prejudice could be mitigated by appropriate jury instructions.[18]

---

[14]  Doc. 112.

[15]  Doc. 114.

[16]  Docs. 122, 123, 125, 126, 129.

[17]  Doc. 107 at 4; *see id.* at 2-4. Kraynak does not assert that the charges have been improperly joined.

[18]  Doc. 126.

Under Federal Rule of Criminal Procedure 8(a), an "indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Pursuant to Federal Rule of Criminal Procedure 14(a), however, "[i]f the joinder of offenses . . . in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."

"The district court, in exercising its discretion [under Rule 14], balances the potential prejudice to the defendant against the advantages of joinder in terms of judicial economy."[19] Rule 14 "places the burden of showing prejudice from the joinder on the defendant seeking severance,"[20] who "must demonstrate clear and substantial prejudice."[21] As this Court has previously held, "there is a presumption against severance because it is assumed that closely related charges are being tried

---

[19]   *United States v. Sandini*, 888 F.2d 300, 305 (3d Cir. 1989).
[20]   *United States v. Eufrasio*, 935 F.2d 553, 568 (3d Cir. 1991).
[21]   *United States v. Gorecki*, 813 F.2d 40, 43 (3d Cir. 1987) (internal quotation marks and citation omitted).

together."[22] Accordingly, "Defendants bear a 'heavy burden' when moving for severance under Rule 14."[23]

Under that standard, "[m]ere allegations of prejudice are not enough; and it is not sufficient simply to establish that severance would improve the defendant's chance of acquittal . . . [r]ather, [the defendant] must demonstrate clear and substantial prejudice resulting in a manifestly unfair trial."[24] "This is a 'stringent requirement,' necessitating a specific showing of how a single trial on all counts would prejudice a defendant."[25] When a "jury could easily compartmentalize the evidence on each respective count by considering each incident separately,"[26] or when "a case is relatively straightforward and discrete, not involving overly technical or scientific issues, clear and substantial prejudice does not exist, and severance is not required."[27] "Similarly, if evidence relating to one set of charges would be admissible in a separate trial on the other set of charges, severance is not required."[28]

---

[22]  *United States v. Thompson*, 219 F. Supp. 3d 502, 506 (M.D. Pa. 2016) (brackets and internal quotation marks omitted).

[23]  *United States v. Askew*, No. 4:17-CR-00291, 2019 WL 1531986, at *4 (M.D. Pa. Apr. 9, 2019) (internal quotation marks omitted).

[24]  *United States v. Reicherter*, 647 F.2d 397, 400 (3d Cir. 1981).

[25]  *United States v. Hill*, No. 3:17-CR-00276, 2019 WL 2110573, at *4 (M.D. Pa. May 14, 2019) (quoting *Gorecki*, 813 F.2d at 43 (brackets omitted)).

[26]  *United States v. Green*, 563 F. App'x 913, 918 (3d Cir. 2014).

[27]  *Hill*, 2019 WL 2110573, at *4 (internal quotation marks omitted). *See also United States v. Davis*, 397 F.3d 173, 182 (3d Cir. 2005) (focusing prejudice inquiry in part on whether "there are [any] overly technical or scientific issues").

[28]  *Hill*, 2019 WL 2110573, at *4.

Judged under this standard, the Court concludes that Kraynak has failed to demonstrate the existence of clear and substantial prejudice. First, a "jury could easily compartmentalize the evidence on each respective count by considering each incident[s] separately,"[29] which weighs against severance. As the Government accurately notes, the information that is relevant to each of the counts is generally separate and distinct; each count will be supported primarily by each alleged victim's individual pharmacy records, medical records, and prescription monitoring reports ("PMR").[30] Moreover, the Government proffers that its expert witness will focus significantly on the prescription activity and evidence as it relates to each individual victim, and will only broadly address the patient files as a whole to explain why Kraynak's prescription practices were not in accordance with professional standards.[31]

Second, the Court concludes that the evidence from each individual count would largely be admissible in hypothetical separate trials. The majority of the evidence that relates to patient medical records, prescription records, and PMRs—although separate and largely unique to each patient—would be admissible in separate trials because such information is critical for the Government to establish that Kraynak's prescriptions were not in accordance with standard professional

---

[29]   *Green*, 563 F. App'x at 918.
[30]   Doc. 126 at 8-9. The Government explains that PMRs "contain prescription data for all Schedule II controlled substances dispensed by pharmacies in the Commonwealth of Pennsylvania." *Id.* at 3.
[31]   *Id.* at 8-9.

7

practice and lacked a legitimate medical purpose. This conclusion is supported by numerous circuit court cases, most notably one arising from the United States Court of Appeals for the Eleventh Circuit.

In *United States v. Merrill*, the Eleventh Circuit considered whether the district court erred in admitting "more than 33,000 prescriptions for controlled substances [relating to both charged and uncharged conduct] . . . and a chart summarizing these prescriptions" in the prosecution of a doctor for Medicaid fraud and dispensing controlled substances in violation of the Controlled Substances Act.[32] That court determined that the evidence of prescriptions "was relevant and that its probative value was not outweighed by its potential for prejudice."[33] The Eleventh Circuit noted that controlled substances may be prescribed "only in the usual course of professional practice and for a legitimate medical purpose" and that the defendant "claimed that he had not violated the Controlled Substances Act because all his controlled substance prescriptions were made in good faith and for legitimate medical purposes."[34]

The court concluded that the prescription evidence and summary were relevant to the charges for three reasons. "First, the Government could only prove [the prescription of] 'excessive and inappropriate quantities and combinations' [of controlled substances] by presenting evidence on the quantities and combinations

---

[32]   513 F.3d 1293, 1300 (11th Cir. 2008).
[33]   *Id.* at 1301.
[34]   *Id.* at 1301-02.

8

themselves and then comparing those quantities and combinations to a relevant norm to show that they were excessive and inappropriate."[35] Second, the prescription records "raised an inference of excessiveness and impropriety. The summary revealed that patients were coming in for visits less than two weeks apart to receive maximum dose prescriptions of the same drug," which an expert had testified was highly inappropriate.[36] Finally, the court concluded that "the number of drugs being prescribed to each patient and the combination of drugs being prescribed to each patient raised an inference of inappropriate and excessive conduct" because some of the drugs had the same pharmacological effect, and "some of the patients were prescribed up to seven or eight drugs on the same day," which raised significant concerns of unexpected side effects and complications.[37]

Similarly, here, an evaluation of Kraynak's prescription practices as a whole is important to evaluate whether his prescriptions to each individual patient were appropriate, or whether those prescriptions were outside the norm of professional conduct. The presentation of those patient files is likewise necessary for the jury to evaluate whether Kraynak's medical records as a whole—and thus his prescription practices—were outside the usual course of professional practice.[38] As the

---

[35] *Id.* at 1302.

[36] *Id.*

[37] *Id.* at 1302-03.

[38] This information is important for a jury to evaluate, for example, whether Kraynak's record keeping patterns were deliberate, or whether only a small number of files were incomplete due to lost or missing records, or even inadvertence or oversight.

Government's expert witness explained, the patient files are critical because they "distinguish[] the practice of medicine from drug dealing. Absent medical documentation, in my opinion, the dispensing of controlled substances in type and amounts requested by patients because patients report satisfaction with the drugs is no different than any other form of drug dealing."[39]

And here too the number and combination of drugs being prescribed to each patient raises an inference of inappropriate and excessive prescriptions, as some of the controlled substances have similar pharmacological effects and, because many of those drugs were opioids, the combinations of those prescriptions "greatly" increased the risk of overdose for those patients.[40] As the United States Court of Appeals for the Ninth Circuit has concluded, "uncharged prescriptions of controlled substances in enormous quantities, and in dangerous combinations, support a reasonable inference that the underlying prescriptions were issued outside the usual course of professional practice and without a legitimate medical purpose"[41] and all medical records would thus be admissible in hypothetical individual trials.[42]

---

[39]   Doc. 60 at 5.

[40]   Doc. 60 at 3-4.

[41]   *United States v. Lague*, 971 F.3d 1032, 1040 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1695 (2021).

[42]   In much the same way, those medical records would be admissible in cases related to allegations that he maintained drug-involved premises, as they are relevant to determine whether Kraynak's prescription practices were outside the usual course of professional practice and without a legitimate medical purpose and, consequently, that the activities that occurred in those premises violated the Controlled Substances Act.

Third, while there may be some attendant prejudice from the presentation of multiple patient medical records, prescription records, and PMRs in one trial, any prejudice may be contained with adequate limiting instructions.[43] The Court will instruct the jury that separate consideration must be given to each count, and that its conclusion of guilt or innocence with respect to one count must not influence its determination with respect to any other count. Furthermore, the Court would consider issuing any specific limiting instructions requested by Kraynak. Accordingly, the Court cannot conclude that there is evidence of clear and substantial prejudice, or that any potential prejudice outweighs the judicial economies that would be realized from conducting a single trial, rather than twelve or more separate trials. Kraynak's motion to sever will therefore be denied.

## B.    Motion to Strike Surplusage in Indictment

Next, Kraynak argues that the majority of the language contained in the indictment is both irrelevant or immaterial and prejudicial, and therefore should be stricken.[44] Specifically, Kraynak contends that information related to the schedules of the Controlled Substance Act and other laws, discussion of evidence that the Government intends to introduce at trial, and paragraphs related to Kraynak's

---

[43]    *See Lague*, 971 F.3d at 1042 (holding that appropriate instructions "mitigated the prejudice of admitting the 'other act' evidence" related to prescriptions for individuals not charged in that case); *Askew*, 2019 WL 1531986, at *4 (noting that any alleged prejudice "will be appropriately minimized and balanced by the standard Third Circuit model criminal jury instructions 3.12 through 3.15").

[44]    Doc. 109.

prescription practices and patient medical records should be stricken from the indictment.[45]

The Government in turn argues that the challenged paragraphs provide information relevant to understanding the charges and their elements.[46] For example, many of the paragraphs detail Kraynak's knowledge of the regulations that were applicable to his conduct and how Kraynak's conduct departed from those requirements, and many of the paragraphs detail the applicable statutes and regulations that are necessary to understand the underlying charges.[47] Moreover, the Government contends that Kraynak will not suffer any prejudice from the inclusion of the challenged paragraphs, and any risk of prejudice will be eliminated by appropriate jury instructions.[48]

"An indictment must contain 'the elements of the offense charged' and enable the defendant 'to plead an acquittal or conviction in bar of future prosecutions for the same offense.'"[49] "'As long as the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment, the right to a grand jury is not normally violated by the fact that the indictment alleges more crimes or other means of committing the same crime.'"[50]

---

[45]   *Id.*
[46]   Doc. 125.
[47]   *Id.* at 7-9.
[48]   *Id.* at 11-13.
[49]   *United States v. Hedgepeth*, 434 F.3d 609, 612 (3d Cir. 2006) (quoting *Hamling v. United States,* 418 U.S. 87, 117 (1974)).
[50]   *Id.* (quoting *United States v. Miller,* 471 U.S. 130, 136 (1985)).

Nevertheless, Federal Rule of Criminal Procedure 7(d) provides that, upon motion of a defendant, "the court may strike surplusage from the indictment or information." The purpose of this rule is to protect "the defendant against immaterial or irrelevant allegations in an indictment or information, which may . . . be prejudicial."[51] While motions to strike surplusage are rarely granted, "the court may strike surplusage from the indictment or information when it is both irrelevant (or immaterial) and prejudicial."[52] As the United States Court of Appeals for the Third Circuit has explained:

> Logic demands the conjunctive standard: information that is prejudicial, yet relevant to the indictment, must be included for any future conviction to stand and information that is irrelevant need not be struck if there is no evidence that the defendant was prejudiced by its inclusion.[53]

The Court concludes that the challenged paragraphs need not be stricken from the indictment for two reasons. First, those paragraphs are relevant and material. Paragraphs two through five of the indictment describe previous administrative actions that were taken against Kraynak with respect to his prescription practices and patient records—in particular, his issuance of large quantities of controlled substances to patients and his failure properly record his interactions with those patients or to properly justify the prescription of those controlled substances.[54]

---

[51] Fed. R. Crim. P. 7(d) Advisory Committee's Note.
[52] *Hedgepeth*, 434 F.3d at 612.
[53] *Id.*
[54] Doc. 3 at 1-4.

According to the indictment, the Board ultimately issued an order finding that Kraynak had departed from, and failed to conform to, relevant standards or acceptable practices with regard to the prescription of controlled substances.[55] These paragraphs are directly relevant to the question of whether Kraynak issued prescriptions for a legitimate medical purpose and in the usual course of his professional practice,[56] which is a key element to the offense of distribution of a controlled substance by a medical professional.[57] These paragraphs thus not only "fairly inform[ Kraynak] of the charge against which he must defend, . . . [but also] enable[] him to plead an acquittal or conviction in bar of future prosecutions for the same offense."[58]

Similarly, paragraphs nine through eleven detail Pennsylvania's PMR system and the quantity of pills that Kraynak prescribed,[59] which is relevant to assertions that the prescriptions were excessive and not issued for a legitimate medical purpose

---

[55] *Id.* at 3.

[56] As explained previously, this deviation from the norms of the practice is important to the Government's case as the deviations make it impossible, in the view of the Government's expert, to distinguish Kraynak's actions from "any other form of drug dealing." Doc. 60 at 5.

[57] *See* 21 C.F.R. § 1306.04(a) (noting that "[a] prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice . . . [and a]n order purporting to be a prescription issued not in the usual course of professional treatment . . . is not a prescription within the meaning and intent of section 309 of the Act (21 U.S.C. 829) and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances").

[58] *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007).

[59] Doc. 3 at 7-8.

and in the usual course of professional practice.[60] And paragraphs twenty and twenty-one provide specific ways in which the Government alleges that Kraynak distributed controlled substances in a manner that was not for a legitimate medical purpose and in the usual course of his professional practice. These paragraphs collectively aid Kraynak in understanding the charges against him and in fashioning a defense against those charges.

Paragraphs six through eight of the indictment describe the various schedules of controlled substances, their potential for abuse, and their effects on the human body.[61] Paragraphs twelve through seventeen review the statutory definitions provided in the Controlled Substances Act that may apply to Kraynak's prosecution.[62] These paragraphs provide further detail as to the elements of the crimes with which Kraynak has been charged.

Finally, paragraphs eighteen and nineteen detail the Pennsylvania Code of Professional and Vocational Standards, which set forth the standards that are applicable to medical professionals who prescribe controlled substances in Pennsylvania.[63] Those paragraphs discuss in detail: how a physician must examine a patient and the medical history that a physician must take from that patient; the

---

[60]   *See Lague*, 971 F.3d at 1040 (holding that "prescriptions of controlled substances in enormous quantities, and in dangerous combinations, support a reasonable inference that the underlying prescriptions were issued outside the usual course of professional practice and without a legitimate medical purpose").

[61]   *Id.* at 4-7.

[62]   *Id.* at 8-10.

[63]   *Id.* at 10-13.

consistent reevaluations that must be performed for continued prescription of a controlled substance; counseling that must be provided to the patients; and, importantly, the information that a doctor must place into a patient's medical records when a controlled substance is prescribed.[64] Those paragraphs also outline that physicians must maintain patient records for at least seven years.[65] Collectively, this information is directly relevant to the question of whether Kraynak knew that the prescriptions he issued were not for a legitimate medical purpose and in the usual course of his professional practice, as this information makes clear that Kraynak was required to keep certain records but, as alleged by the Government, failed to so maintain those records. This provides Kraynak with notice that the Government will assert that Kraynak's failure to maintain patient records is a significant part of the case against him and, again, permits Kraynak to mount a proper defense.

Second, beyond the relevance of the challenged paragraphs, there is little prejudice that could result from the paragraphs remaining in the indictment. Although most of Kraynak's allegations of prejudice are somewhat conclusory, he asserts that the discussion of Pennsylvania law in paragraphs eighteen and nineteen would confuse the jury and prejudice him.[66] The Court respectfully disagrees. As discussed previously, the standards detailed in those paragraphs will be important benchmarks for the jury to use to evaluate whether Kraynak's failure to maintain

---

64  *Id.*
65  *Id.* at 13.
66  Doc. 132.

patient medical records rendered unlawful the prescriptions that he issued. Although there is a small chance of jury confusion, any risk of confusion or prejudice will be mitigated by the Court's closing instructions, wherein the Court will advise the jury that the indictment is not evidence, and that the jury must solely follow the law as explained by the Court. Accordingly, the Court concludes that Kraynak has failed to sustain his burden of proving that the language contained in the indictment is both immaterial or irrelevant and prejudicial, and Kraynak's motion for disclosure will be denied.

### C.    Motion to Disclose Surveillance Evidence

Next, Kraynak seeks the disclosure of any electronic wiretaps or other undercover surveillance that the Government obtained in this case.[67] Although the Government disputes that it is required to turn over any such evidence under the laws that Kraynak has cited,[68] it represents that "[t]he United States has not gathered and is not in possession of any intercepted wire, oral or electronic communications of the defendant or of anyone else on the defendant's premises."[69] Because there is no surveillance for the Government to disclose, the Court is not "able to grant the requested relief" and Kraynak's motion will be denied as moot.[70]

---

[67] Docs. 110, 11.
[68] Doc. 123.
[69] *Id.* at 1.
[70] *Hamilton v. Bromley*, 862 F.3d 329, 335 (3d Cir. 2017).

### D.    Motion to Disclose Rough Notes and Recordings

Kraynak next seeks the disclosure of rough notes or recordings of interviews of witnesses who will testify at trial.[71] Kraynak asserts that such evidence is material to his defense, as the Government may use those materials "to corroborate and refresh [witness] recollection[s] at trial."[72] The Government contends that the information that Kraynak requests is not discoverable until after the witnesses have testified, and Kraynak's motion should therefore be denied.[73]

Federal law provides that in any criminal case, "no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subp[o]ena, discovery, or inspection until said witness has testified on direct examination in the trial of the case."[74] This is echoed by Federal Rule of Criminal Procedure 26.2(a), which similarly provides that, after a witness—other than the defendant—has testified on direct examination, upon appropriate motion a court "must order an attorney for the government . . . to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony." The Third Circuit has observed that "[t]he blunt command of the statute together with the unequivocal

---

[71]   Doc. 112.
[72]   Doc. 113 at 2.
[73]   Doc. 129.
[74]   18 U.S.C. § 3500(a).

legislative history has led to unbroken precedent in the Courts of Appeals denying to district courts the power to compel production of the statements of government witnesses until conclusion of direct examination at the trial."[75]

Although Kraynak relies on Federal Rule of Criminal Procedure 16 in furtherance of his request, that Rule does not supersede Rule 26.2. To the contrary, except in limited circumstances not applicable here, Rule 16 does not "authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500."[76] While district courts have limited discretion to authorize disclosure of witness statements prior to the applicable deadline, "the defendant must [set forth] a particularized need for such information."[77]

The Court concludes that Kraynak is not entitled to production of any notes or recordings of witness interviews at this time. As 18 U.S.C. § 3500 makes clear, Kraynak is not entitled to production of the requested materials until after the witnesses testify, and he has not demonstrated a particularized need for those materials prior thereto. Moreover, the Government assures the Court that it "will preserve the agents' rough notes and recordings of interviews if there were any generated,"[78] which eliminates any concern that the requested documents will not be

---

[75]  *United States v. Murphy*, 569 F.2d 771, 773 (3d Cir. 1978).

[76]  Fed. R. Crim. P. 16(a)(2).

[77]  *United States v. Buckner*, No. 3:18-CR-00349, 2020 WL 211403, at *5 (M.D. Pa. Jan. 13, 2020).

[78]  Doc. 129 at 7.

produced at the appropriate time. Accordingly, except to the extent that any rough notes or recordings of witness interviews must be produced in accordance with *Brady v. Maryland*,[79] Kraynak's motion for production of such documents will be denied without prejudice to his right to refile this motion at the appropriate time.

### E.  Motion for Bill of Particulars

Finally, Kraynak moves for a bill of particulars, asserting that the information contained in the indictment is insufficient to permit him to mount an effective defense.[80] Specifically, Kraynak requests a list of: (1) any overt acts upon which the Government may rely at trial; (2) the quantities and type of drugs allegedly distributed, and to whom those drugs were distributed, along with "all other doctors prescribing to all such persons, including when and quantity"; (3) information regarding the pharmacists who dispensed controlled substances to the alleged victims; (4) information from the Pennsylvania Controlled Substances Reporting System as to each potential witness; (5) detailed information regarding which of the sixteen practices listed in paragraph twenty of the indictment apply to which of the twelve alleged victims; and (6) information regarding the forfeiture allegations contained in the indictment.[81]

The Government argues that the information sought is not appropriately subject to a bill of particulars but, instead, constitute discovery requests and requests

---

[79]  373 U.S. 83 (1963).
[80]  Docs. 114, 115.
[81]  Doc. 114.

that seek for the Government to reveal its theory of the case.[82] Because the indictment supplies sufficient information and the Government has provided extensive discovery, the Government asserts that a bill of particulars is not warranted.[83]

Federal Rule of Criminal Procedure 7(f) grants district courts the discretion to direct the Government to file a bill of particulars. A bill of particulars may be warranted if "the indictment itself is too vague and indefinite" to "adequately apprise the defendant of what he must be prepared to meet."[84] "The purpose of the bill of particulars is to inform the defendant of the nature of the charges brought against him to adequately prepare his defense, to avoid surprise during the trial and to protect him against a second prosecution for an inadequately described offense."[85]

"A bill of particulars, unlike discovery, is not intended to provide the defendant with the fruits of the government's investigation. Rather, it is intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his *own* investigation."[86] Accordingly, the Government is not required to "weave the information at its command into the warp of a fully integrated trial theory for the benefit of the defendant" or to "include every fact to

---

[82] Doc. 122.
[83] *Id.*
[84] *United States v. Moyer*, 674 F.3d 192, 203 (3d Cir. 2012) (internal quotation marks omitted).
[85] *Id.* (internal quotation marks omitted).
[86] *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985) (internal citations omitted).

be alleged by the government."[87] Stated differently, "[t]he defendant's constitutional right is to know the offense with which he is charged, not to know the details of how it will be proved."[88] Moreover, "access to . . . [f]ull discovery . . . obviates the need for a bill of particulars."[89]

A bill of particulars is not warranted in this case, as the indictment is not so vague as to fail to apprise Kraynak of the charges against him. With respect to the distribution charges alleged in Counts 1 through 12, the Government must prove four elements: (1) that Kraynak distributed a mixture or substance containing a controlled substance; (2) that he distributed the controlled substance outside the usual course of professional practice and not for a legitimate medical purpose; (3) that he distributed the controlled substance while knowing or intending that the distribution was outside the usual course of professional practice and not for a legitimate medical purpose; and (4) that the controlled substance was the substance identified in the indictment.[90]

The indictment provides sufficient information as to those elements. It details the Government's assertion that Kraynak knew of the relevant professional standards applicable to the prescription of controlled substances based on prior administrative

---

[87]  *Moyer*, 674 F.3d at 203 (internal quotation marks omitted).

[88]  *United States v. Kendall,* 665 F.2d 126, 135 (7th Cir. 1981).

[89]  *United States v. Urban*, 404 F.3d 754, 772 (3d Cir. 2005).

[90]  Third Cir. Model Crim. Jury Instruction 6.21.841B; *United States v. Rottschaefer*, 178 F. App'x 145, 147 (3d Cir. 2006).

proceedings and explains what those standards are.[91] The indictment further details ways in which Kraynak allegedly failed to comply with those professional standards, rendering illegal his conduct in prescribing the identified opioids.[92] These paragraphs collectively give notice to Kraynak that he allegedly distributed a mixture or substance containing a controlled substance, which was done knowing that such distribution was outside the usual course of professional practice and not for a legitimate medical purpose. The indictment lists the individuals associated with each of the twelve counts, along with the substances prescribed to each patients and the approximate dates of the alleged distribution.[93] Finally, the indictment lists some quantities and types of opioids that Kraynak prescribed in general.[94] These paragraphs give Kraynak notice of the specific substances that he is alleged to have distributed, along with sufficient information to identify the specifics of those allegations and defend against them.

With regard to Counts 13 through 17, alleging distribution of a controlled substance resulting in death, the elements are the same as those discussed above with respect to Counts 1 through 12, except that those counts contain the additional element that death resulted from the use of those controlled substances.[95] The

---

[91] Doc. 3 at 1-13.
[92] *Id.* at 13-15.
[93] *Id.* at 16-17.
[94] *Id.* at 7-8.
[95] *Burrage v. United States*, 571 U.S. 204, 210 (2014).

indictment sufficiently alleges that element of the offense.[96] Additionally, through discovery the Government has provided an expert report that sets forth exactly how the Government maintains that prescriptions issued by Kraynak resulted in the death of the alleged victims, and a bill of particulars is thus not warranted as to those counts.[97]

Finally, as to Counts 18 and 19, the Government must prove that Kraynak "'(1) knowingly exercising some degree of control over the premises; (2) knowingly making the place available for the use alleged in the indictment; and (3) continuity in pursuing the manufacture, distribution, or use of controlled substances.'"[98] The indictment adequately alleges these elements, as it alleges that Kraynak opened and maintained certain premises and knowingly used those locations to distribute controlled substances outside of the usual course of professional practice and without a legitimate medical purpose.[99]

The indictment thus "adequately apprise[s] the defendant of what he must be prepared to meet" at trial[100] and provides him with sufficient information "to permit [him] to conduct his *own* investigation."[101] The additional information that Kraynak requests is more akin to a discovery request wherein he seeks "the details of how

---

[96]   Doc. 3 at 18-19.
[97]   Doc. 60.
[98]   *United States v. Elmore*, 586 F. App'x 559, 561 (11th Cir. 2014) (quoting *United States v. Clavis*, 956 F.2d 1079, 1090 (11th Cir. 1992))).
[99]   Doc. 3 at 20-21.
[100]   *Moyer*, 674 F.3d at 203 (internal quotation marks omitted).
[101]   *Smith*, 776 F.2d at 1111 (internal citations omitted).

[the Government's case] will be proved," which is not a proper use for a bill of particulars.[102] Consequently, Kraynak's motion will be denied.

## III.   CONCLUSION

For the foregoing reasons, the Court concludes that Kraynak's pretrial motions are without merit, and those motions will be denied.

An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
United States District Judge

---

[102]  *Kendall,* 665 F.2d at 135.