**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.  4:17-CR-00403 |
| v. | (Chief Judge Brann) |
| RAYMOND KRAYNAK, | |
| Defendant. | |

**MEMORANDUM OPINION**

**AUGUST 14, 2025**

Raymond Kraynak, formerly a licensed doctor of osteopathy with a practice in small, rural communities in central Pennsylvania, was for years one of the most prolific prescribers of opioids in the Commonwealth of Pennsylvania. The evidence presented by the Government at trial established that, during the final years Kraynak operated his practice, he failed to act as a reasonable physician but, instead, operated a pill mill that provided massive quantities of opioids indiscriminately to patients despite, in several cases, obvious signs that opioids were not warranted or would be highly dangerous to those individuals.

Faced with this overwhelming evidence, Kraynak's trial attorneys wisely urged him to accept a plea offer from the Government that would provide for a fifteen-year sentence—rather than the mandatory minimum term of twenty years' imprisonment carried by several charges and the advisory *United States Sentencing Guidelines Manual* range of 360 months to life imprisonment. Kraynak knowingly

and intelligently entered into that proposed plea agreement, but quickly had second thoughts and unsuccessfully attempted to withdraw that plea.

Now, after having begun his prison sentence and exhausted his appeals, he brings a 28 U.S.C. § 2255 motion seeking to vacate his convictions and sentence. In his motion, Kraynak blames all but himself for his incarceration—he asserts that every attorney who assisted him acted with deficiency so extreme as to the violate the Constitution of the United States' guarantee to counsel. He further blames this Court, its court reporter, and the Government of the United States for purportedly undertaking criminal behavior that directly led to the failure of his appeal to the United States Court of Appeals for the Third Circuit. But the facts demonstrate that his attorneys operated admirably in difficult circumstances—both during trial, plea negotiations, and on appeal—and further fail to establish any criminal action on the part of anyone other than Kraynak. His § 2255 motion therefore fails.

## I.    BACKGROUND

In 2017, Raymond Kraynak was charged in an indictment with twelve counts of unlawfully distributing and dispensing a controlled substance, in violation of 21 U.S.C. § 841(a)(1) (Counts One through Twelve), five counts of unlawfully distributing and dispensing a controlled substance resulting in death, in violation of 21 U.S.C. § 841(a)(1) (Counts Thirteen through Seventeen), and two counts of maintaining a drug-involved premises, in violation of 21 U.S.C. § 856(a)(1) (Counts

Eighteen and Nineteen).[1] After the completion of discovery, *Daubert* motions, and pretrial motions, trial commenced in this matter in September of 2021. Following approximately three weeks of testimony, the Government rested its case in chief. Before Kraynak commenced his defense, however, he elected to enter into a plea agreement with the Government.[2]

Kraynak then signed a written plea agreement, wherein he agreed to plead guilty to Counts One through Twelve of the indictment, and the Government agreed to dismiss the remaining charges.[3] That plea agreement was a Federal Rule of Criminal Procedure 11(c)(1)(C) agreement and, in it, the parties agreed to a term of 15 years' imprisonment.[4] The day that the plea agreement was signed the Court conducted a thorough plea colloquy, accepted the guilty plea, and adjudged Kraynak guilty of those offenses.[5] In February 2022, the Court notified the parties that it would accept the Rule 11(c)(1)(C) agreement and the term of imprisonment to which the parties had agreed.[6]

Before sentencing, however, Kraynak filed a *pro se* motion to withdraw his guilty plea, citing as reasons his innocence and claims of ineffective assistance of

---

[1]  Doc. 3.
[2]  The evidence presented at trial was discussed in some detail in the Court's oral and written rulings denying Kraynak's motion to withdraw his guilty plea, Docs. 273 and 279, and as such will not be discussed here except as relevant to this motion.
[3]  Doc. 216.
[4]  *Id.* at 10.
[5]  Doc. 219.
[6]  Doc. 234.

counsel.[7] In response, this Court granted a motion for Kraynak's trial attorneys Thomas Thornton, Esq. and Gerald Lord, Esq. ("Trial Counsel") to withdraw and appointed Stephanie Cesare, Esq. to represent Kraynak at a hearing on his motion to withdraw his plea and any future proceedings ("Hearing Counsel").[8]

Hearing Counsel filed a counseled motion to withdraw Kraynak's guilty plea, reiterating Kraynak's assertion that he was innocent of the crimes charged, and that his guilty plea was the result of ineffective assistance on the part of Trial Counsel.[9] The Court thereafter held a hearing on Kraynak's motion, where it received testimony from Kraynak, Kraynak's son, and Trial Counsel.[10] After receiving that testimony, this Court orally denied Kraynak's motion to withdraw his guilty plea[11] and sentenced Kraynak to fifteen years' imprisonment.[12]

The Court rejected Kraynak's assertion that he was innocent of his crimes of conviction.[13] Specifically, the evidence established that the prescriptions issued by Kraynak to the individuals noted in the indictment were not made for a legitimate medical purpose—as demonstrated by Kraynak's failure to keep proper medical records, his decision to ignore clear warning signs that opioids were not appropriate

---

[7]   Doc. 233.
[8]   Doc. 242.
[9]   Docs. 249, 250.
[10]   Doc. 279.
[11]   *Id.* at 245-84.
[12]   *Id.* at 311. *See* Doc. 275.
[13]   Doc. 273 at 6-29.

for certain patients, and disregard of clear evidence that patients were at risk for abusing opioids or suffering serious harm from their use.[14]

Moreover, the evidence readily demonstrated that Kraynak knew or intended that those prescriptions were outside the usual course or professional practice and without a legitimate medical purpose. This was demonstrated by the fact that (1) Kraynak had taken a comprehensive course in the management of controlled substances and therefore knew the standards of acceptable medical practice but nevertheless deviated from them, (2) was warned that patients were addicted to opioids but continued to prescribe opioids to those patients, (3) prescribed opioids despite clear signs of opioid abuse, (4) ignored clear concerns from pharmacists who often refused to fill prescriptions issued by Kraynak, and (5) the immense quantities of opioids that Kraynak prescribed in a small, rural community.[15]

Importantly as it relates to Kraynak's current motion, this Court also determined that he did not receive ineffective assistance of counsel from Trial Counsel.[16] First, the recommendation to plead guilty was wholly reasonable in light of the substantial reduction in sentencing exposure that resulted from the guilty plea, along with the near certainty of a conviction after trial.[17] Second, Trial Counsel was not ineffective for failing to secure a forensic pathologist as an expert witness, since

---

[14]  *Id.* at 7-23.
[15]  *Id.* at 23-29.
[16]  *Id.* at 29-36.
[17]  *Id.* at 29-30.

the expert they did retain was sufficient to attempt to rebut the Government's expert witness and attack an element of the charges against Kraynak.[18] Lastly, Trial Counsel had not made any false promises to Kraynak, had adequately explained the plea agreement to Kraynak, and did not misadvise Kraynak as to whether he needed to answer questions truthfully during the change of plea hearing.[19]

Kraynak thereafter filed an appeal with the Third Circuit challenging the decision to deny his motion to withdraw his guilty plea, but the Third Circuit affirmed that ruling.[20] Of consequence here, that court examined the record and determined that Kraynak had not demonstrated his innocence of the crimes to which he had pled guilty, as "the record makes clear that Kraynak repeatedly failed to keep appropriate medical records, failed to examine or diagnose his patients before prescribing opioids, and failed to note signs of substance abuse in his patients, all of which are compelled by the standard of medical practice."[21] Nor had Kraynak demonstrated ineffective assistance of counsel, since Trial Counsel's strategic choices had been reasonable, Kraynak had testified under oath that he was satisfied with his attorneys, they did not pressure him to plead guilty, and their advice that he

---

[18]  *Id.* at 30-32.
[19]  *Id.* at 32-36.
[20]  *United States v. Kraynak*, No. 22-2500, 2023 WL 4636419 (3d Cir. July 20, 2023), *cert. denied*, 144 S. Ct. 862 (2024).
[21]  *Id.* at *2.

accept the plea offer was reasonable in light of the overwhelming evidence against Kraynak.[22]

In February 2025 Kraynak filed a timely 28 U.S.C. § 2255 motion challenging his convictions based on allegations of ineffective assistance of counsel and misconduct by this Court and the United States Attorney's Office.[23] In three related claims, Kraynak asserts that (1) this Court somehow directed the "criminal redaction" of the transcript of the hearing related to Kraynak's motion to withdraw his guilty plea ("Hearing Transcript") which purportedly removed conclusive evidence of his innocence; (2) the Government aided this action in some undefined way; and (3) Hearing Counsel was ineffective for failing to notice and raise this issue on appeal.[24]

The remainder of Kraynak's claims center around ineffective assistance of counsel. First, he asserts that Trial Counsel was ineffective for failing to: (1) adequately prepare for trial or file a Federal Rule of Criminal Procedure 29 motion; (2) move to dismiss the indictment on grounds that it did not adequately specify the exact prescriptions at issue; (3) object to the Government's failure to present evidence related to any particular prescription for the victims named in each count of the indictment; and (4) object to improper testimony from the Government's

---

[22] *Id.*
[23] Docs. 291, 292.
[24] Doc. 292 at 1-7, 12.

expert witness, Stephen Thomas, M.D.[25] Second, with the exception of the failure to adequately prepare for trial, Kraynak contends that Hearing Counsel was ineffective for failing to raise these issues on appeal.[26]

The Government responds that Kraynak's § 2255 motion is without merit.[27] As an initial matter, the Government contends that Kraynak has already raised claims of ineffective assistance of counsel as it relates to Trial Counsel, and he therefore cannot again raise these claims here.[28] In any event, the Government argues that Kraynak does not assert that any of the actions of which he now complains impacted his decision to plead guilty, particularly in light of the overwhelming evidence presented against him at trial.[29]

As to substantive claims that Kraynak may bring, the Government first asserts that there is no evidence that the Hearing Transcript was altered—because it was not—and Hearing Counsel could not have been ineffective for failing to raise a "fanciful claim" on appeal.[30] As to the failure to file a Rule 29 motion at the close of

---

[25]  *Id.* at 8-11.

[26]  *Id.* at 7-11. Kraynak appears to attempt to raise a plethora of new issues in his reply brief. *See* Doc. 300. However, as a general matter courts "will not consider arguments raised . . . for the first time in a reply brief." *United States v. Boggi*, 74 F.3d 470, 478 (3d Cir. 1996). This rule exists so that parties "are not prejudiced by the lack of an opportunity to respond to issues raised for the first time in [a] . . . reply brief." *Id.* Accordingly, any new claims raised in Kraynak's reply brief will not be considered, particularly where he was already informed of the necessity to raise any and all claims in his § 2255 motion, and was warned of the consequences of the failure to so do. Doc. 384.

[27]  Doc. 296.

[28]  *Id.* at 3.

[29]  *Id.* at 3-4.

[30]  *Id.* at 7; *see id.* at 6-7.

the Government's case, the Government points out that said failure was a result of the decision to enter into a plea agreement.[31] Furthermore, the Government contends that the indictment was legally sufficient, and there was no ineffectiveness in the failure to challenge it before this Court or on appeal.[32] The Government further notes that Trial Counsel challenged Dr. Thomas' testimony, but the testimony was ruled admissible by this Court and Hearing Counsel had no legitimate basis upon which to challenge that ruling on appeal.[33] Finally, the Government contends that there was no prosecutorial misconduct.[34]

Kraynak has filed a reply brief, rendering this matter ripe for disposition.[35] For the reasons discussed below, the Court will deny Kraynak's motion.

## II.    DISCUSSION

### A.    Purported Redaction of Transcript

Kraynak's non-effective assistance of counsel claims revolve around allegations that this Court and the prosecution engaged in a nefarious scheme to redact the Hearing Transcript to remove evidence of Kraynak's innocence.[36] This claim is utterly without merit, as the Hearing Transcript was not altered in any way.

---

[31] *Id.* at 7-8.
[32] *Id.* at 8-9.
[33] *Id.* at 9-10.
[34] *Id.* at 11-12.
[35] Doc. 300.
[36] Doc. 292 at 1-7, 12.

It is Kraynak's burden as the movant to provide some evidence to support his claim,[37] and his bizarre, self-serving conspiracy theory lacks the required factual support to raise even an inference that the Hearing Transcript was altered in any fashion. Moreover, two pieces of available evidence directly undercut Kraynak's assertion.

First, in preparing the Hearing Transcript, the court reporter certified, pursuant to 28 U.S.C. § 753, that the transcript prepared is accurate.[38] That certification constitutes *prima facie* evidence that the Hearing Transcript is "a correct statement of the testimony taken and proceedings had."[39] Kraynak's differing recollection of the testimony "is insufficient to overcome the statutory presumption that the transcript is correct."[40]

Second, Kraynak's supposed evidence of tampering—derived from a purported one-minute rule wherein one minute of testimony should result in one page of transcript—is unsupported by the record. For one, that assertion finds no support in the record; his belief is apparently derived from a Google search, and unnamed sources on the Internet cannot substitute proper evidence. Moreover, a comparison of the challenged portion of the Hearing Transcript with the

---

[37] *See, e.g.*, *United States v. McLaughlin*, 607 F. Supp. 3d 522, 531 (M.D. Pa. 2022).
[38] Doc. 279 at 319.
[39] 28 U.S.C. § 753.
[40] *United States v. Harris*, 966 F.3d 755, 763 (8th Cir. 2020) (internal quotation marks omitted). *See also United States v. Hill*, 859 F. App'x 652, 653 (4th Cir. 2021) ("A defendant's bald assertion of error is insufficient to overcome the statutory presumption that the transcript is correct").

unchallenged portions demonstrates that the one-minute rule is simply not accurate here.

During the portion of the hearing wherein Kraynak testified, 134 pages of transcript were produced for 209 minutes of testimony.[41] This equals roughly 0.641 pages of transcript per minute of testimony. During the sentencing phase of that hearing—a portion where Kraynak takes no issue with the transcript produced—33 pages of transcript were produced for 46 minutes of testimony,[42] resulting in a rate of 0.717 pages per minute. These rates are fairly similar, and both far below the one-page-per-minute mark that Kraynak insists is correct. At the slightly faster rate generated during the sentencing hearing, only 149.85 pages of transcript would have been produced, which is far below the 209 pages that Kraynak believes should have been made. These calculations thoroughly disprove Kraynak's unsupported assertion regarding the number of pages that should have been produced for his testimony. Absent any proof to support Kraynak's assertion of tampering, these claims fail.[43]

---

[41] Doc. 279 at 2-136.

[42] *Id.* at 285-318.

[43] This Court can state unequivocally that Kraynak can, of course, produce no evidence that the Court tampered with the Hearing Transcript since that did not happen, and no tampering occurred. Even if there were some nebulous conspiracy that for some unknown reason decided to target a single doctor in central Pennsylvania, there is no reason to tamper with the Hearing Transcript for the simple reason that the Hearing Transcript contained no evidence of Kraynak's innocence. No such evidence exists—Kraynak was ultimately damned by his own medical records, or lack thereof, that showed he operated outside the standards demanded by the medical profession.

### B.    Ineffective Assistance of Counsel

Next, Kraynak asserts that Trial Counsel and Hearing Counsel were constitutionally ineffective for numerous reasons.

"In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court established a two-part test to evaluate ineffective assistance of counsel claims."[44] "The first part of the *Strickland* test requires 'showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'"[45] In determining whether an attorney's performance is deficient, courts must "determine whether, in light of all the circumstances, the [attorney's] acts or omissions were outside the wide range of professionally competent assistance."[46] As the United States Supreme Court has emphasized:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.[47]

"The second part [of the *Strickland* test] specifies that the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable

---

[44]    *United States v. Bui*, 795 F.3d 363, 366 (3d Cir. 2015).
[45]    *Id.* (quoting *Strickland*, 466 U.S. at 687).
[46]    *Strickland*, 466 U.S. at 690.
[47]    *Id.*

probability is a probability sufficient to undermine confidence in the outcome.'"[48]

"This does not require a showing that counsel's actions more likely than not altered the outcome, but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable."[49] In other words, a movant must establish a "a substantial likelihood" that any errors "changed the outcome of . . . trial."[50]

## 1.    Ineffective Assistance of Trial Counsel

Kraynak's allegations of ineffective assistance of counsel as related to the performance of Trial Counsel are procedurally barred and may not be considered here. It is true that, as a general matter, claims of ineffective assistance of counsel may not be brought in a direct appeal and are instead "reserved for 28 U.S.C. § 2255 actions."[51]

This general rule "stems from the reality that such claims frequently involve questions regarding conduct that occurred outside the purview of the district court and therefore can be resolved only after a factual development at an appropriate hearing."[52] However, the Third Circuit has "recognized a narrow exception" to that

---

[48]    *Bui*, 795 F.3d at 366 (quoting *Strickland*, 466 U.S. at 694).
[49]    *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (internal quotation marks omitted).
[50]    *Branch v. Sweeney*, 758 F.3d 226, 238 (3d Cir. 2014).
[51]    *United States v. Morena*, 547 F.3d 191, 198 (3d Cir. 2008).
[52]    *United States v. McLaughlin*, 386 F.3d 547, 555-56 (3d Cir. 2004) (internal quotation marks omitted).

rule, and will consider ineffective assistance of counsel claims on direct appeal if "the record is sufficient to allow determination of ineffective assistance of counsel."[53]

Here, Kraynak sought to withdraw his guilty plea on the ground that he had received ineffective assistance of counsel and, consequently, this Court held a hearing to develop a sufficient factual record to rule upon that claim.[54] This development of the record was sufficient for the Third Circuit to analyze Kraynak's claims of ineffective assistance of counsel on direct appeal and conclude that such a claim was "unpersuasive, because Kraynak did not show 'that his attorney's advice was under all the circumstances unreasonable under prevailing professional norms.'"[55] This is, therefore, the rare case where claims of ineffective assistance of counsel could and should have been raised on direct appeal.

This brings the Court to the additional well-established rule that "federal prisoners may not use a motion under 28 U.S.C. § 2255 to relitigate a claim that was previously rejected on direct appeal"[56] and, accordingly, "issues resolved in a prior direct appeal will not be reviewed again by way of a § 2255 motion."[57] Accordingly,

---

[53] *Id.* at 556 (internal quotation marks omitted).

[54] Docs. 233, 249, 250, 279.

[55] *Kraynak*, 2023 WL 4636419, at *2 (quoting *United States v. James*, 928 F.3d 247, 258 (3d Cir. 2019)).

[56] *Foster v. Chatman*, 136 S. Ct. 1737, 1758 (2016) (Alito, J., concurring).

[57] *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014).

any claims of ineffective assistance of counsel that were raised in Kraynak's direct appeal may not be brought again in his § 2255 motion.

To the extent that Kraynak raises new claims of ineffective assistance of counsel related to Trial Counsel that were not raised in his direct appeal, the Court likewise cannot reach the substance of those claims, as such claims have been procedurally defaulted. The United State Supreme Court has long held that there is a "general rule that claims not raised on direct appeal may not be raised on collateral review unless the [movant] shows cause and prejudice"[58] or is able to demonstrate "that he is actually innocent."[59] To show cause for procedural default, "a defendant must show that 'some objective factor external to the defense impeded counsel's efforts' to raise the claim."[60] "Examples of external impediments which have been found to constitute cause in the procedural default context include interference by officials, a showing that the factual or legal basis for a claim was not reasonably available to counsel, and ineffective assistance of counsel."[61]

Here, Kraynak's claims of ineffective assistance of counsel, as related to Trial Counsel, could have been raised on direct appeal. Kraynak therefore committed procedural default as to any claims he did not raise, and this Court may consider

---

[58]   *Massaro v. United States*, 538 U.S. 500, 504 (2003). *See also Travillion*, 759 F.3d at 288 n.11 (noting that "issues which should have been raised on direct appeal may not be raised with a § 2255 motion").

[59]   *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal quotation marks omitted).

[60]   *United States v. Pelullo*, 399 F.3d 197, 223 (3d Cir. 2005) (quoting *McCleskey v. Zant,* 499 U.S. 467, 493 (1991)).

[61]   *Id.* (internal quotation marks omitted).

these claims only if Kraynak is able to establish cause and prejudice, or actual innocence.[62] The Court concludes that he cannot.

As to actual innocence, although Kraynak has attempted to demonstrate that he is legally innocent, he does not contest his factual guilt—that is, he does not contest that he performed the actions that formed the basis of his convictions, he only challenges whether those actions were criminal. But "[a]ctual innocence means factual innocence, not mere legal innocence."[63] Moreover, Kraynak presents no new evidence that was not previously available during his trial; this precludes the possibility that, on the current record, the Court may find that he is actually innocent of his crimes of conviction.[64] Additionally, given the substantial evidence of Kraynak's guilt that this Court has previously discussed at length, it is impossible to conclude that Kraynak is actually innocent.

With regard to whether cause exists to excuse Kraynak's procedural default, the only possible cause would be ineffective assistance of counsel. However, as discussed below, Kraynak's claims of ineffective assistance of counsel are utterly

---

[62] *Massaro*, 538 U.S. at 504.

[63] *Granda v. United States*, 990 F.3d 1272, 1292 (11th Cir. 2021) (quoting *Lynn v. United States*, 365 F.3d 1225, 1235 n.18 (11th Cir. 2004)).

[64] *See Wallace v. Mahanoy*, 2 F.4th 133, 151 (3d Cir. 2021) ("To satisfy the demanding actual innocence exception, a [movant] must (1) present new, reliable evidence of his innocence; and (2) show by a preponderance of the evidence that it is more likely than not that no reasonable juror would have convicted him (*i.e.*, a reasonable juror would have reasonable doubt about his guilt) in light of the new evidence"); *Howell v. Superintendent Albion SCI*, 978 F.3d 54, 59 (3d Cir. 2020) (noting that a movant "must present 'new reliable evidence' of actual innocence").

devoid of merit. Given that the issues Kraynak raises are without merit, Hearing Counsel did not perform deficiently in failing to raise those issues on appeal, nor was Kraynak prejudiced by that failure. Accordingly, Kraynak's procedural default may not be excused, and the Court will not reach the merits of any arguments related to ineffective assistance of Trial Counsel.

### 2. Ineffective Assistance of Hearing Counsel

Finally, Kraynak argues that Hearing Counsel was ineffective for failing to raise several issues on appeal. First, Kraynak asserts that Hearing Counsel should have challenged the indictment on the ground that it did not sufficiently describe the prescriptions at issue and when those prescriptions were issued for each of the first twelve counts of the indictment.[65] Second, he contends that Hearing Counsel should have challenged the sufficiency of the evidence, as the Government allegedly did not present evidence of specific prescriptions with regard to the twelve non-death counts.[66] Third, Kraynak asserts that Hearing Counsel should have argued on appeal that Dr. Thomas provided inadmissible testimony.[67]

### a. Sufficiency of the Indictment

As to Kraynak's assertion that Hearing Counsel should have challenged on appeal the sufficiency of the indictment, "an indictment is sufficient when it (1)

---

[65] Doc. 292 at 7-9; Doc. 300 at 3-4.
[66] Doc. 292 at 10.
[67] *Id.* at 10-11.

'contains the elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet,' and (2) allows him to 'plead an acquittal or conviction in bar of future prosecutions for the same offense.'"[68] Although indictments "must allege more than just the essential elements of the offense . . . '[n]o greater specificity than the statutory language is required so long as there is sufficient factual orientation' to permit a defendant to prepare his defense and invoke double jeopardy."[69] The specificity required "is not particularly onerous" and the Third Circuit has "found that a defendant has sufficient notice to guard against a future prosecution in violation of the protection against double jeopardy if an indictment specifies the time frame for the criminal conduct."[70]

Here, the indictment was sufficient to permit Kraynak to adequately prepare his defense and guard against any potential future double jeopardy violation. Counts One though Twelve, of which Kraynak complains, alleged that Kraynak, "acting outside the usual course of professional practice and not for a legitimate medical purpose, did knowingly, intentionally and unlawfully prescribe, distribute and dispense" certain controlled substances.[71] The indictment then lists the patient's name, a specific controlled substance, and dates of distribution for each count.[72]

---

[68] *United States v. John-Baptiste*, 747 F.3d 186, 195 (3d Cir. 2014) (quoting *Russell v. United States,* 369 U.S. 749, 763-64 (1962) (internal citation omitted)).

[69] *Id.* at 196 (internal citations and quotation marks omitted).

[70] *Id.* (citing *United States v. Huet*, 665 F.3d 588, 596 (3d Cir. 2012)).

[71] Doc. 3 at 16; *see id.* at 15-17.

[72] *Id.* at 16-17.

As this Court has previously recounted, the elements that the Government must prove for the charge contained in Counts One through Twelve are:

> (1) [the defendant] distributed a mixture or substance containing a controlled substance; (2) . . . he distributed the controlled substance outside the usual course of professional practice and not for a legitimate medical purpose; (3) . . . he distributed the controlled substance while knowing or intending that the distribution was outside the usual course of professional practice and not for a legitimate medical purpose; and (4) . . . the controlled substance was the substance identified in the indictment.[73]

All four elements are adequately alleged in the indictment. As to the first and fourth elements, the indictment alleged that Kraynak prescribed, distributed, and dispensed certain controlled substances, with each substance being identified for each individual patient—those being, depending on the patient, Hydrocodone, Oxycodone, or Fentanyl.[74] With regard to the second and third elements, the indictment directly averred that Kraynak took these actions knowingly and intentional "outside the usual course of professional practice and not for a legitimate medical purpose."[75] These allegations meet each element of the crime alleged.

Kraynak nevertheless asserts that the indictment is deficient because it did not identify a specific prescription for each patient issued on a specific date. As to the date, the indictment alleged a clear date range for each patient. For example, for R.C. in Count One the prescriptions were issued between December 21, 2012 and May 2,

---

[73] *United States v. Kraynak*, 553 F. Supp. 3d 245, 251 (M.D. Pa. 2021).
[74] Doc. 3 at 16-17.
[75] *Id.* at 16.

2015, while for T.M. in Count Ten the prescriptions were issued between December 21, 2012 and April 28, 2014.[76] Similar ranges are alleged for all twelve counts,[77] and the Third Circuit has explicitly held that such ranges are sufficient.[78]

Kraynak is also incorrect in his assertion that the indictment was defective because it did not allege a single, specific prescription. By specifying the time frame and drug type that Kraynak prescribed, the Government alleged that *all* prescriptions written within that time frame were written outside the usual course of professional practice and without a legitimate medical purpose. "Although this indictment could easily have identified" each specific prescription or broken each prescription into separate counts, "it adequately specified the period in which the alleged crimes occurred, and set forth enough specificity about the crimes charged to protect against any subsequent attempt to charge [Kraynak] with any crimes arising from the conduct that is the subject of this indictment."[79]

This comports with ample Third Circuit caselaw that provides an indictment is sufficient "where it informs the defendant of the statute he is charged with

---

[76] *Id.* at 16-17.

[77] *Id.*

[78] *See Huet*, 665 F.3d at 596 (holding the indictment possessed "the required 'factual orientation': it specifies the time period during which the violation occurred ('on or about August 10, 2007, to on or about January 11, 2008'")), abrogated on other grounds by *Rehaif v. United States*, 588 U.S. 225 (2019).

[79] *John-Baptiste*, 747 F.3d at 196. For the same reason, Kraynak's new argument raised for the first time in his reply brief—that the indictment was deficient for listing multiple medications in the causing-death-counts—even if it were considered, is incorrect, at those allegations placed Kraynak on notice as to what he would need to defend against.

violating, lists the elements of a violation under the statute, and specifies the time period during which the violations occurred."[80] That holding is also in accord with *United States v. Steele*, a case from the United States Court of Appeals for the Eleventh Circuit, wherein that court found an indictment against a pharmacist for dispensing controlled substances was adequate where it alleged:

> That from on or about July 1, 1993, and continuously thereafter, up to and including on or about November 2, 1993, in the Northern District of Florida, the defendant, William O. Steele, did knowingly and intentionally dispense hydromorphone hydrochloride, a schedule II controlled substance, commonly known as Dilaudid, in violation of Title 21, United States Code, Section 841(a)(1).[81]

Because the indictment was sufficient, this underlying issue is without merit. And it is well-settled that an attorney "cannot be deemed ineffective for failing to raise a meritless claim."[82] Consequently, this claim of ineffective assistance of counsel fails.

### b. Evidentiary Issue

Kraynak next asserts that Hearing Counsel was ineffective for failing to raise on appeal Kraynak's concerns that the Government "did not present evidence related to any particular prescription written to any patient listed in the indictment."[83]

---

[80] *United States v. Stevenson*, 832 F.3d 412, 424 (3d Cir. 2016) (quoting *Huet*, 665 F.3d at 595).

[81] *United States v. Steele*, 147 F.3d 1316, 1317 (11th Cir. 1998); *see id.* at 1317-20.

[82] *Preston v. Superintendent Graterford SCI*, 902 F.3d 365, 379 (3d Cir. 2018) (internal quotation marks omitted).

[83] Doc. 292 at 10.

Rather, he asserts, the Government presented only propensity evidence, which is insufficient to sustain his conviction.[84]

Hearing Counsel neither performed deficiently, nor was Kraynak prejudiced by the failure to raise this issue on appeal, because the Government did present proof as to specific prescriptions for each count in the indictment. Specifically, through Louis Callavini, a diversion investigator for the Drug Enforcement Administration, the Government presented the entire prescription history for every single patient named in the indictment.[85] These documents were admitted into evidence and therefore would have gone to the jury had Kraynak insisted that the trial proceed to its conclusion.[86] Moreover, Dr. Thomas examined the medical history and records for every single patient listed and provided his expert opinion as to why those prescriptions were issued outside the usual course of professional practice and not for a legitimate medical purpose,[87] as this Court previously expounded upon at some length.[88]

Because the Government presented the very evidence that Kraynak claims was never presented, there was nothing for Hearing Counsel to challenge on appeal.

---

[84] *Id.*

[85] Doc. 262 at 4, 71-80.

[86] *Id.* at 80.

[87] Doc. 244 at 8-21, 27-35, 37-42, 43-55, 60-62, 68-73, 76-81, 85-88, 91-101, 109-12, 117-35, 140-51.

[88] Doc. 273 at 11-23.

She therefore did not operate ineffectively in failing to raise this non-existent issue before the Third Circuit.

This Court has discussed in detail on numerous occasions the reckless disregard with which Kraynak operated his medical practice. His failure to operate within the strictures of legitimate medical practice had deleterious impacts on the communities in which he operated and severely impacted—for the worse—the lives of his patients. In denying Kraynak's motion to withdraw his guilty plea, this Court:

> Highlight[ed] three pieces of information from the trial that struck [it] as most illustrative of the disregard with which Dr. Kraynak prescribed controlled substances.
>
> First, Dr. Kraynak conducted a pill count with Mr. Wiest on May 20, 2014, and that count showed that Mr. Wiest had run out of Oxycodone pills after only 10 days, meaning, then, if he had been consuming the pills, he would have been taking 25 pills per day. Dr. Kraynak, nevertheless, issued a prescription for an additional 250 pills of Oxycodone that very day.
>
> Second, on April 22, 2014, Dr. Kraynak prescribed 120 pills of Soma, 30 pills of Ambien, 30 pills of Valium, and 150 pills of Oxycodone at 30 milligrams to Ms. Schrantz, which was, itself, medically unnecessary. Then Dr. Kraynak issued her an identical prescription only seven days later. And shortly thereafter, Ms. Schrantz overdosed on those substances and died. It is simply inconceivable that any responsible doctor would issue two such prescriptions to one person within one week.
>
> Third, Drug Enforcement Agency's Supervisory Intelligence Analyst, Laura Henry, presented prescription data from Pennsylvania that demonstrated that Dr. Kraynak, who served small communities in Central Pennsylvania in 2015 and 2016 was the top prescriber of opioids in the state, and prescribed more opioids than the Department of Veteran's Affairs Hospitals in either Philadelphia or Pittsburgh.

Those numbers are simply shocking. I do not know how any rational human being, let alone a doctor, could look at that information and conclude that the prescriptions issued were in any way reasonable or legitimate.

I do not believe that any reasonable juror can conclude, based on that evidence, Dr. Kraynak did not know that he was acting outside the usual course of professional practice and without a legitimate medical purpose when he issued those prescriptions.

Dr. Kraynak's abuse of prescription practice is obvious to me, even as a lay person.[89]

There is simply no doubt that Kraynak is guilty of the crimes to which he pled guilty, as supported by the overwhelming evidence offered by the Government at trial. His protestations to the contrary are utterly incredulous and without merit, and any contention that his attorneys were ineffective for failing to challenge the sufficiency of the evidence fails.

### c.    Dr. Thomas' Testimony

Finally, Kraynak contends that Hearing Counsel was ineffective for failing to argue on appeal that some of Dr. Thomas' testimony should have been excluded for testifying as to Kraynak's state of mind.[90] Kraynak takes issue with the following quote during Dr. Thomas' testimony:

Q. From your review of Catherine Schrantz's file, she was admitted to the hospital a few weeks earlier for an overdose on these prescriptions, correct?

---

[89]    Doc. 279 at 271-72.
[90]    Doc. 292 at 10-11.

A. Yes, she was. The reason I did not mention that in my chronology is because I couldn't say that Dr. Kraynak knew it. In those other instances where we had the overdose faxed in to his -- faxed to his office and in his patient file, then I could say yes, I know that he knew that. But as I stated earlier, when I started to go down this, my intent is not to sit back and say well now I know all of these things and I'm going to apply them to his practice, given what he knew. And each instance, I have taken it from if I'm inside that practice and I know at the time what he knew when he knew it, can I make this judgment that it is not for a medically-legitimate purpose in the usual course of professional practice. This is not Monday morning quarterbacking. This is from sitting in the pocket. And he knew what was happening and he did it anyway. And that's what makes it not just a problem with the standard of care; that's what make it's not the practice of medicine. It's not in the patient's best interests, and he knew it wasn't. He endangered patients, and he knew it did.

And that makes it not for a medically-legitimate purpose in the usual course of professional practice, and it cannot. It cannot.[91]

Regardless of whether Trial Counsel should have objected to that statement, Hearing Counsel could not have been ineffective for failing to raise this issue on appeal for two reasons. First, "[i]t is well established that a criminal defendant's unconditional, knowing and voluntary plea of guilty waives all non-jurisdictional issues."[92] Given the waiver of any non-jurisdictional issues—and one piece of testimony that may have exceeded the proper bounds of expert testimony[93] is

---

[91] Doc. 244 at 101-02.

[92] *Washington v. Sobina*, 475 F.3d 162, 165 (3d Cir. 2007). *See also United States v. King*, 27 M.J. 664, 671 (A.C.M.R. 1988) ("a provident guilty plea on the advice of competent counsel serves as a waiver of erroneous evidentiary rulings" made during trial), *aff'd*, 30 M.J. 59 (C.M.A. 1990).

[93] An expert witness may not testify "regarding the defendant's intent." *United States v. Davis*, 397 F.3d 173, 179 (3d Cir. 2005). To the extent that Dr. Thomas' opinion may be read as opining that Kraynak knew his actions were outside the usual course or professional practice and without a legitimate medical purpose, that portion may have been improper. However, Dr.

certainly non-jurisdictional—Hearing Counsel could not have rendered deficient performance in failing to raise this issue on appeal.

Second, Kraynak was not prejudiced by this failure; because this issue was waived by the guilty plea, the Third Circuit would not have considered it on appeal, and the outcome of Kraynak's appeal would have been no different. Similarly, given the overwhelming evidence of Kraynak's guilt that was presented at trial, this issue would likely have been deemed harmless error even if it could have been raised on appeal. This claim therefore also fails.

## C.    Certificate of Appealability

Because this Court will deny Kraynak's § 2255 motion, this decision will not be appealable unless this Court or a circuit justice issues a certificate of appealability.[94] A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right."[95] To satisfy this standard Kraynak must demonstrate that reasonable jurists would find that the Court's assessment of the procedural issues and constitutional claims is debatable or wrong.[96] This Court

---

Thomas' greater point stands—that his opinion was not made with the benefit of hindsight but was based solely on information available to Kraynak at the time Kraynak issued the prescriptions. And given Kraynak's training and past issues with prescriptions, it is clear that Dr. Thomas' overarching expert opinion, that Kaynak had to have known that his conduct was outside professional norms, was well-supported by the factual record and a reasonable jury would have been hard pressed to reach a different conclusion.

[94]    28 U.S.C. § 2253(c)(1)(B).

[95]    *Id.* § 2253(c)(2).

[96]    *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003).

finds that Kraynak has not met this burden, and the Court therefore declines to issue a certificate of appealability.

## III.    CONCLUSION

For the foregoing reasons, Kraynak's 28 U.S.C. § 2255 motion will be denied. The Court will also deny a certificate of appealability.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge